IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(NEWARK VICINAGE)

| | | |
|---|---|---|
| MITCHELL ARNOLD, | : | |
| *Plaintiff,* | : | |
| v. | : | CIVIL ACTION NO._____ |
| AKRIMAX PHARMACEUTICALS, LLC. | : | |
| *Defendant.* | : | JURY TRIAL DEMANDED |

**CIVIL ACTION COMPLAINT**
*(Employee Retirement Income Security Act ("ERISA"))*

**I.   PRELIMINARY STATEMENT**

1. This is an action for an award of damages, attorneys' fees, and other relief on behalf of Plaintiff, Mitchell Arnold ("Plaintiff"), a former employee of the Defendant, Akrimax Pharmaceuticals, LLC ("Defendant"), who has been harmed by the Defendant's unlawful actions.

2. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. for severance benefits to which he is entitled, and for other appropriate relief.

**II.   JURISDICTION AND VENUE:**

3. The original jurisdiction of this Court is invoked, and venue is proper in this judicial district, pursuant to Title 28 U.S.C. §§1331 and 1391, as Plaintiff's claims are substantively based on ERISA and a substantial portion of the events giving rise to his claims occurred in this judicial district.

4. All conditions precedent to the institution of this lawsuit have been fulfilled and Plaintiff has satisfied all jurisdiction prerequisites to the maintenance of this action.

### III. PARTIES

5. Plaintiff, Mitchell Arnold ("Plaintiff"), is a fifty six (56) year old male citizen of the State of New Jersey, residing therein at 26 Austin Court, Mount Laurel, New Jersey 08054.

6. Defendant, Akrimax Pharmaceuticals, LLC ("Defendant"), is an employer duly organized and existing under the laws of the State of Delaware, maintaining a prior headquarters in New Jersey at 11 Commerce Drive #100, Cranford, New Jersey 07016.

7. At all times relevant hereto, Defendant was acting through its agents, servants and employees, who were acting within the scope of their authority, course of employment, and under the direct control of Defendant.

### IV. STATEMENT OF FACTS

#### Plaintiff's Background

8. With more than three (3) decades of accounting experience in manufacturing, distribution, telecommunications, and pharmaceutical sales, Plaintiff, Mitchell Arnold ("Plaintiff"), has achieved an outstanding track record in financial accounting.

9. Throughout his career, Plaintiff has demonstrated superior organizational leadership that has promoted financial strength and fiscal control of several corporations. Plaintiff has also improved the short and long term financial performance of said corporations while optimizing cash flow and improving accounting processes.

10. Prior to the commencement of his esteemed career, Plaintiff received a Bachelor's of Science degree in accounting from Pennsylvania State University, University Park. Thereafter, Plaintiff received a Master of Business Administration ("MBA") degree in finance from Temple University.

11. From in or about 1985 to in or about 1986, Plaintiff served as a Cost Accountant for Paramount Packaging Corporation, preparing monthly journal entries and account analysis.

12. In or about 1986 until 1988, Plaintiff was employed by Keystone Franklin Inc., originally serving as an Accountant. He was responsible for managing monthly closings, fixed asset accounting, financial reporting, cash management and reporting. Notably, during his tenure at Keystone Franklin Inc., he was instrumental in implementing Quantel System 20, for general ledger and accounts payable.

13. From in or about 1988 until in or about 2004, Plaintiff was employed by TV Guide Publishing Group, serving in various roles including Accountant, Accounting Manager, Assistant Controller, and Director of Accounting. During his tenure of employment with TV Guild Publishing Group, Plaintiff achieved the following accomplishments: prepared accounting manuals and internal control handbooks; reduced the monthly closing cycle from seven (7) to four (4) days through improved efficiency; increased cash flow by $2 million through the creation of a detailed cash flow model; saved $250,000 per year by consolidating accounting, accounts payable for News Corporation affiliated companies; coordinated the acquisition accounting following the purchase of a multi-million dollar publisher, as well as the merger with Gemstar International; implemented the successful conversation to JD Edwards for all financial applications; implemented Hyperion Financial Management; and served as the Finance Lead for the implementation of Advantage, a subscription fulfillment system.

14. From in or about 2004 until in or about 2005, Plaintiff served as the Director of Accounting for RCN Corporation. In this capacity, Plaintiff oversaw a staff of nineteen (19) employees and reported directly to the Executive Vice President and the Chief Financial Officer. Notably, during his tenure with RCN Corporation, Plaintiff formalized and documented polices and procedures, improved processes within the accounting and cash processing areas, and was a member of the Sarbanes Oxley Governance Committee.

15. From in or about 2005 until in or about 2010, Plaintiff was employed by Laureate Pharma, Inc., where he served as the Director of Finance and was ultimately promoted to the position of Vice President and Controller. At Laureate Pharma, Inc., Plaintiff led the Sarbanes Oxley implementation, accelerated cash flow by $2 million by implementing new billing procedures and an additional $1 million by instituting new controls to reduce inventory, and increased annual revenue by $2 million by establishing a job costing function. Furthermore, Plaintiff was instrumental in creating a capital investment committee, formalized financial reporting processes, and coordinated the financial transition activities during the 2008 sale of the Company including negotiating a new credit facility and securing new insurance policies.

**Plaintiff's Employment with Defendant**

16. In or about August of 2011, the Defendant hired Plaintiff to serve in the position of Controller.

17. During the course of his employment with Defendant, Plaintiff performed at an exemplary work level. As evidence thereof, under his direction, Plaintiff created a detailed cash flow model to forecast cash balances and provide management with critical decision making tools, saved $2 million through his direction to exit an unprofitable line of business, saved over

$1 million in negotiating an agreement with a major supplier, improved working capital by $2 million, and optimized processes and procedures to ensure audit readiness.

18.    By way of background, in or about January of 2012, Defendant issued its employees a handbook. Therein, Defendant identified its Severance Policy Plan ("the Plan"), which states, *inter alia*:

    a.    Non-eligible individuals include in relevant… "any individual who is terminated due to… discharge for cause."

    b.    "An employee shall not be eligible to receive severance under [the Plan] unless the following conditions are satisfied:

        i.    [Defendant] determines that the employee is terminated involuntarily in connection with a job elimination, office closing, reduction in force, business restructuring, sale of a business unit or other circumstances as deemed appropriate by [Defendant];

        ii.    Such employee executes such releases or agreement that [Defendant] may deem necessary or appropriate in connection with the payment of severance; and

        iii.    Such employee returns all [Defendant] property as determined by [Defendant] and has satisfactorily settled all expenses owned to [Defendant]."

    c.    Eligible exempt employees are eligible for "1 month of pay per year of service."

19. On or about January 9, 2014, due to his stellar work performance and achievements, Donald Olsen ("Olsen"), President and CEO, promoted Plaintiff to the position of Vice President of Financial Accounting.

20. Plaintiff continued his stellar work performance in the Vice President role as he provided strategic management of accounting and finance functions, facilities management, and government pricing. Furthermore, Plaintiff, at all times, complied with Defendant's policies and procedures.

21. On or about September 20, 2018, the Defendant abruptly terminated Plaintiff's employment without cause, allegedly for "insubordination, disruptiveness, dishonesty, and anger." Notably, upon Plaintiff's requests, the Defendant failed to provide an explanation for its articulated reason for the termination of his employment. In fact, at no time prior to Plaintiff's termination did Defendant ever counsel or discipline Plaintiff for any reason.

22. In terminating Plaintiff's employment without cause and denying Plaintiff severance benefits in accordance with the Plan, Defendant violated the terms of the Plan, and acted in an arbitrary and capricious manner, in violation of ERISA.

## COUNT I
### (ERISA)
### Plaintiff Arnold v. the Defendant

23. Plaintiff incorporates by reference paragraphs 1 through 22 of this Complaint as though fully set forth herein.

24. Defendant has wrongfully failed to pay Plaintiff severance benefits as a eligible employee pursuant to the Plan.

25. Pursuant to ERISA, 29 U.S.C. § 1132 (a)(1)(B), Defendant should be required to pay Plaintiff severance benefits as an eligible employee.

26. The reason expressed by Defendant for Plaintiff's discharge was pretextual in an obvious attempt to avoid paying benefits under the Plan.

27. As a result, Plaintiff has suffered the loss and denial of benefits to which he is entitled to under the Plan.

### PRAYER FOR RELIEF

28. Plaintiff incorporates by reference paragraphs 1 through 27 of this Complaint as though fully set forth at length herein.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in his favor and against the Defendant, and Order that:

(a) Plaintiff is entitled to the severance benefits under the Plan since August of 2011;

(b) Defendant pay to Plaintiff those severance benefits in accordance with the terms of the Plan, with interest;

(c) Defendant to pay Plaintiff costs and expenses of this litigation including reasonable attorney's fees; and

(d) Grant him such further legal and equitable relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

SIDNEY L. GOLD & ASSOC., P.C.

*/s/Traci M. Greenberg, Esquire*

TRACI M. GREENBERG, ESQUIRE
N.J. I.D. NO.: 29712000
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999
tgreenberg@discrimlaw.net
Attorney for Plaintiff

Dated: November 27, 2019

## VERIFICATION

I hereby verify that the statements contained in the attached Complaint are true and correct to the best of my knowledge, information and belief.

DATE: 9/11/19

_____
MITCHELL ARNOLD, PLAINTIFF